# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALCOLM YISRAEL WRIGHT, | 1:10-cv-00011-AWI-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART |
| vs. | (Doc. 30.) |
| SMITH, et al., | |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

## I.    BACKGROUND

Malcolm Yisrael Wright ("Plaintiff") is an inmate currently in North Carolina state custody at the Central Prison Mental Health Facility in Raleigh, North Carolina.  Plaintiff is proceeding pro se and in forma pauperis with this civil rights action pursuant to <u>Bivens vs. Six Unknown Agents</u>, 403 U.S. 388 (1971), based on allegations of events occurring at the United States Penitentiary (USP)-Atwater when Plaintiff was incarcerated there.  Plaintiff filed the Complaint commencing this action on January 4, 2010.  (Doc. 1.)  This case now proceeds with the First Amended Complaint, filed by Plaintiff on January 13, 2011, against defendants Warden Smith and Lieutenant ("Lt.") Gonzales for interference with Plaintiff's incoming mail, in violation of the First Amendment; and against Warden Smith, Lt. Gonzales, and Lt. Miller for violation of his First Amendment rights to exercise his religion.[1]  (Doc. 10.)

---

[1] On October 24, 2011, the court issued a screening order finding that Plaintiff's First Amended Complaint stated cognizable claims only against defendants Warden Smith and Lt. Gonzales for interference with Plaintiff's incoming mail, in violation of the First Amendment; and against Warden Smith, Lt. Gonzales, and Lt. Miller for violation of his First Amendment rights to exercise his religion.  (Doc. 15.)  On November 30, 2011, Plaintiff notified the court of his willingness to proceed only on the claims found cognizable by the court in the screening order.  (Doc. 16.)

On December 11, 2012, defendants Smith, Gonzales, and Miller ("Defendants") filed a motion to dismiss the claims from this action for failure to state a claim and/or failure to exhaust administrative remedies.   (Doc. 30.)   On February 12, 2013, Plaintiff filed an opposition to the motion.  (Doc. 34.) [2]  On February 19, 2013, Defendants filed a reply to the opposition.  (Doc. 37.)  Defendants' motion to dismiss is now before the court.

## II.   PLAINTIFF'S ALLEGATIONS[3]

Plaintiff alleges as follows in the First Amended Complaint.

### A.   Denial of religious meals, prayer items, rabbi, and Jewish materials

Plaintiff arrived at USP-Atwater on May 31, 2007.   (First Amended Cmp., Doc. 10 at 9 ¶11.)  Plaintiff alleges that he is religiously observant.  (Id. at 8 ¶6.)  Plaintiff alleges that he was deprived of his essential daily prayer items, such as his siddur/prayer book, tallit/prayer shawl, yarmulke/religious head covering, and religious literature including scripture.  (Id.) Plaintiff alleges that staff continued to deny him access to his essential daily prayer items, even after the Chaplain notified them that he required them.  (Id. at 9 ¶11.)  Plaintiff alleges that on June 18, 2007, he was finally taken to inventory and receive his property.  (Id. at 10 ¶15.)  A lot of his property was missing.  (Id.)   After inventory, staff told Plaintiff he could not have his property, including his required religious items, on the Warden's orders.  (Id.)  When he asked why not, he was told "Because I say so."  (Id.)  On February 18, 2008, Plaintiff spoke to M. Chavez, Supervisor of Education, who told Plaintiff that Warden Smith, Lt. Gonzales, and Lt. Miller were the ones who had determined that Plaintiff would not be allowed to receive any of his property as long as he remained at USP-Atwater.  (Id. at 24 ¶67.)  Plaintiff was transferred from USP-Atwater on April 1, 2008.  (Id. at 25 ¶72.)

*///*

---

[2] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on April 19, 2012.  (Doc. 24-1.)  On December 13, 2012, subsequent to Defendants' filing of the motion to dismiss, Plaintiff was again provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion.  Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003); Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998).  (Doc. 31.)

[3]  This partial summary of the First Amended Complaint contains Plaintiff's allegations against defendants Smith, Gonzales, and Miller, upon which this case now proceeds, along with background information.

**B.**     **Denial of access to incoming mail**

Plaintiff arrived at USP-Atwater on May 31, 2007.  (First Amended Cmp., Doc. 10 at 9 ¶11.)  In June 2007, Plaintiff sent a request to the mail room inquiring about why he wasn't receiving any of his mail.  (Id. at 11 ¶16.)

Defendants Smith and Lt. Gonzales refused to allow inmates on administrative detention/protective custody to receive personal publications.  (Id. at 12 ¶23.)  On July 18, 2007, Plaintiff received a response to a form BP-8 inmate grievance about not being allowed to receive publications, stating that Warden Smith and Lt. Gonzales had made that rule.  (Id. at 14 ¶30.)  On or about August 14, 2007, Plaintiff spoke to Lt. Gonzales, to whom he had written several times regarding his publication problems.  (Id. at 14 ¶35.)  Lt. Gonzales told Plaintiff that he and Warden Smith had made these decisions, that they were not going to change a thing, and that if he didn't like it he could get a lawyer.  (Id. at 14 ¶36.)  Lt. Gonzales and Warden Smith both told Plaintiff that his publications that were arriving in the mail would be stored in his personal property, but not a single one was, and almost a whole year of Plaintiff's publications disappeared.  (Id. at 14-15, ¶36.)

On January 1, 2008, Plaintiff began a hunger strike that lasted three months.  (Id. at 23 ¶61.)  In February 2008, Plaintiff inquired about why he was not receiving his mail.  (Id. at 23 ¶63.)  Plaintiff was told that Warden Smith, Lt. Gonzales, and Lt. Miller were the ones who determined that Plaintiff would not be allowed to receive any of his property as long as he remained at USP-Atwater.  (Id. at 24 ¶67.)  Plaintiff was also told that his mail was being routed to his Unit Team, that this would cause a delay in the receipt of his mail (it had already been delayed two months), but that steps were being undertaken to deliver his mail at the earliest possible opportunity.  (Id. at 23-24 ¶65.)  However, upon inquiry Plaintiff was informed by his Unit Team that this was not so.  (Id. at 24 ¶65.)  In nearly three months the Unit Team had only received two pieces of mail.  (Id.)  Plaintiff found out later that family and friends had been sending a lot of mail, but he never received any of it.  (Id.)  On April 1, 2008, Plaintiff was transferred from USP-Atwater.  (Id. at 25 ¶72.)

///

### III.    MOTION TO DISMISS FOR FAILURE TO EXHAUST

####     A.    <u>Statutory Exhaustion Requirement</u>

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. <u>Jones v. Bock</u>, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. <u>Jones</u>, 549 U.S. at 216; <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. <u>Wyatt</u> at 1119 (citing <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. <u>Wyatt</u> at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. <u>Id.</u> The burden is on defendant to raise and prove the plaintiff's absence of exhaustion of administrative remedies. <u>Id.</u> Defendant has the burden is to show evidence that the plaintiff-prisoner did not complete the process that was available. <u>Id.</u> Because there can be no absence of administrative exhaustion under the PLRA unless some relief remains available, a defendant must demonstrate that pertinent relief remains available. <u>Akhtar v. Mesa</u>, 698 F.3d 1202 (9th Cir. 2012). The burden

///

then falls to Plaintiff to show that he completed the process available to him, or that the process was unavailable to him.  Albino v. Baca, 697 F.3d 1023 (9th Cir. 2012).

The Court takes judicial notice of the fact that the federal Bureau of Prisons (BOP) has an administrative grievance system for prisoner complaints.  28 C.F.R. §542.10, et seq.  The process is initiated by submitting a formal written Administrative Remedy Request on form BP-9.  Id. § 542.14.  In most cases, inmates are required to complete informal resolution and submit a Request form to the Warden within twenty calendar days of the date on which the basis for the Request occurred.  Id.  If an inmate is not satisfied with the Warden's response, he or she may submit an Appeal on form BP-10 to the Regional Director within twenty calendar days of the date the Warden signed the response.  Id. § 542.15(a).  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on form BP-11 to the General Counsel within thirty days of the date the Regional Director signed the response.  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  In order to satisfy § 1997e(a), federal prisoners in the custody of the BOP are required to use this process to exhaust their claims prior to filing suit.  Woodford v. Ngo, 548 U.S. 81, 85 (2006); McKinney, 311 F.3d. at 1199-1201.

**B.    Defendants' Motion**

Defendants move to dismiss claims from this action on the ground that Plaintiff failed to exhaust the BOP's administrative appeals process regarding his claims against Defendants. Defendants argue that Plaintiff failed to start or complete the administrative process on his claims of interference with publications, denial of religious meals, access to a contract rabbi, and the availability of Jewish materials in the prison chapel.

Defendants assert that although Plaintiff is not presently a federal inmate, from May 31, 2007 through March 31, 2008, he was housed at USP-Atwater as a state boarder, at which time he was returned to the custody of North Carolina.  (Declaration of Shelly Shandor, Doc. 30-2 at 3 ¶5.)  Defendants present evidence that while Plaintiff was housed at USP-Atwater, he filed only four grievances, and none of them exhausted Plaintiff's remedies with regard to his claims against Defendants in this action.

(1)     On July 12, 2007, Plaintiff submitted grievance log no. 461430-F1 on form BP-9. (Id. ¶7 and Exh. 4.)  In this grievance, Plaintiff alleged his life was in danger and sought protection.  (Id.)  The BP-9 was rejected on August 1, 2007, because Plaintiff did not first attempt informal resolution, he did not submit his remedy through an authorized person, and he submitted more than one continuation page.  (Id.)

(2)     On August 26, 2007, Plaintiff filed another grievance log no. 467436-F1 on form BP-9, raising the same issues raised in 461430-F1.  (Id. ¶8 and Exh. 5.)  Plaintiff exhausted the appeals process for this BP-9 on February 20, 2008.  (Id.)

(3)     On March 4, 2008, Plaintiff submitted grievance log no. 485550-R1 on form BP-10.  (Id. ¶9 and Exh. 6.)  Plaintiff filed directly with the Regional Director, claiming the issues raised were "sensitive" and could not be filed with the Warden at USP-Atwater.  (Id.) Plaintiff alleged Lt. Miller had verbally abused him and pushed him down the hallway as hard as he could while Plaintiff was in a wheelchair.  (Id.)  Plaintiff also alleged Lt. Miller had taken his property, including his religious items "essential for daily religious practice" on December 24, 2007.  (Id.)  This BP-10 was rejected on March 11, 2008 as not "sensitive."  (Id.)  Plaintiff did not appeal this rejection.  (Id.)

(4)     Also on March 4, 2008, Plaintiff submitted grievance no. 486531-F1 on form BP-9.  (Id. ¶10 and Exh. 7.)  Plaintiff alleged Lt. Miller had taken all of his property on December 24, 2007, and that Plaintiff had told staff at that time that he needed his property, especially his religious items "necessary for daily religious practice ...."  (Id.)  Plaintiff also alleged he was being denied access to incoming correspondence:  "I am allowed to receive mail while on hunger strike, but the majority of my mail, including all correspondence from family and friends, is being placed in SHU property and I'm denied access to it."  (Id.)  The Warden denied Plaintiff's BP-9 on April 7, 2008, and Plaintiff did not appeal this denial.  (Id.)

///

///

///

///

### C.     **Plaintiff's Opposition**

The Court looks to Plaintiff's opposition filed on February 12, 2013, Complaint filed on January 4, 2010, and First Amended Complaint filed on January 13, 2011.[4]  (Docs. 1, 10, 34.)

Plaintiff acknowledges that grievances no. 461430-F1 and 467436-F1 did not concern any of the issues in this lawsuit.  (Opp'n, Doc. 34 ¶¶20, 23.)

Plaintiff also acknowledges that grievance no. 485550-R1, submitted on March 4, 2008, was rejected as not "sensitive," and that he did not appeal the rejection because he was unable to receive another BP-9 form from staff.  (Id. ¶¶3, 5.)  However, Plaintiff asserts that this rejection is "irrelevant" because on the same date, he also submitted grievance no. 486531-F1 as a non-sensitive grievance, concerning largely the same issues as no. 485550-R1.  (Id. ¶5.)

Plaintiff claims he could not appeal the Warden's response to grievance no. 486531-F1, because he was transferred from USP-Atwater on March 31, 2008, the response to the grievance was not forwarded to him, and he was unable to obtain the required BOP forms after he left USP-Atwater. (Id. ¶¶6, 18.)  Plaintiff also asserts that he did not file appeals or grievances concerning all of the allegations in the complaint because he had extreme difficulty obtaining grievance forms from prison staff.  (Complaint, Doc. 1 at 2 ¶II.B; First Amended Complaint, Doc. 10 at 3 ¶II.B.)  Plaintiff asserts that some of his grievances were not processed by staff, and others were rejected on improper grounds.  (Id.)  Plaintiff claims that prison staff sought extensions of time to respond to grievance no. 486531-F1 until a date they knew he would no longer be in federal custody, then failed to forward the response.  (Id.)  Plaintiff asserts that prison staff from USP-Atwater did not forward the response to him, against policy, even though they knew his next address.  (Complaint at 2 ¶II.C; First Amended Complaint at 3 ¶II.C.)  Plaintiff asserts that he wrote to prison administration staff requesting the response and

---

[4]In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20. Plaintiff signed the Complaint and First Amended Complaint under penalty of perjury, and they therefore contain admissible evidence. (Doc. 1 at 3; Doc. 10 at 4.)  Therefore, Plaintiff's opposition to the motion to dismiss is based in part on the evidence in his verified complaints and accompanying exhibits.  Plaintiff's opposition is also verified and therefore contains admissible evidence.  (Doc. 34 at 24.)

additional grievance forms in order to file on all facts [in the complaint], but the BOP declined to respond.  (Id.)  Plaintiff argues that because the remedies were no longer available, he could not exhaust them, and therefore he exhausted his remedies.  (Opp'n, Doc. 34 ¶18.)  Plaintiff also argues that because he never received the Warden's response, he was not capable of determining whether he was dissatisfied with the response.  (Id. ¶19.)  Plaintiff claims he never saw the response until December 13, 2012, when he received Defendants' motion to dismiss and the accompanying exhibits.  (Id.)

Plaintiff claims that staff at USP-Atwater were almost always unresponsive when he requested grievance forms, and that he received contradictory answers whenever he inquired about who he should submit the grievance form to.  (Id. ¶21.)  He also claims there were delays at USP-Atwater in processing grievances, and it took him half a year simply to exhaust grievance no 467436-F1.  (Id. ¶23.)

**D.      Defendants' Reply**

Defendants assert that Plaintiff acknowledges he did not start the administrative remedy process for his claims, except as to his incoming publications, and did not complete the process for that claim.  Defendants argue that the remedies were available but Plaintiff chose not to pursue them.  Defendants assert that Plaintiff did not raise the following concerns at the administrative level:  religious meals, access to a contract Rabbi, or availability of Jewish religious materials in the prison chapel.  (Reply, Doc. 37 at 5 :5-10.)  Defendants also assert that Plaintiff admits, and BOP records demonstrate, that Plaintiff's grievances nos. 461630 and 467436 did not raise any issue regarding incoming publications.  (Id. at 5:15-17.)  Defendants argue that there is no evidence that the same procedures that allowed Plaintiff to complete the grievance process for his safety claim no. 467436-F1 were unavailable for his incoming publications claim.  (Id. at 5:21-22.)

**E.      Discussion**

This case now proceeds only on Plaintiff's claims against defendants Warden Smith and Lieutenant ("Lt.") Gonzales for interference with Plaintiff's incoming mail, in violation of the First Amendment; and against Warden Smith, Lt. Gonzales, and Lt. Miller for violation of his

First Amendment rights to exercise his religion.  Plaintiff's religion claim includes allegations that he was denied religious meals, that his essential prayer items were taken from him, that there was no rabbi available, and that there were no Jewish religious materials in the chapel.

Defendants have produced official records showing that Plaintiff did not complete the process available at USP-Atwater to exhaust remedies for any of Plaintiff's claims in this action.  Plaintiff filed only four grievances while he was housed at USP-Atwater from May 31, 2007 through March 31, 2008, nos. 461430-F1, 467436-F1, 485550-R1, and 486531-F1. (Shandor Decl., Doc. 30-2 at ¶¶5,7-10 and Exhs. 4-7.)

### 1.   Grievances Nos. 461430-F1 and 467436-F1

The parties are in agreement that grievances nos. 461430-F1 and 467436-F1 did not concern any of Plaintiff's claims in this action.  (Opp'n, Doc. 34 ¶¶20, 23; Reply, Doc. 37 at 5:15-17.)  Therefore, Plaintiff failed to exhaust his remedies for any of the claims in this action with grievances no. 461430-F1 or no. 467436-F1.

### 2.   Grievance No. 485550-R1

Plaintiff concedes that he did not complete the grievance process for this appeal. (Opp'n ¶¶3, 5.)  Therefore, Plaintiff has not exhausted his remedies for any of the claims in this action with grievance no. 485550-R1.

### 3.   Grievance No. 486531-F1

For grievance no. 486531-F1, Defendants have provided evidence that Plaintiff did not complete the grievance process, showing that on March 4, 2008, Plaintiff submitted the grievance; on April 7, 2008, the Warden denied the grievance; and Plaintiff did not appeal the denial.  (Shandor Decl. ¶10 and Exh. 7.)

Plaintiff concedes that he failed to complete the BOP's process for grievance no. 486531-F1.  However, he argues that the process was not available to him because (1) he never received the Warden's response, and (2) he did not have access to federal forms or the BOP's process after March 31, 2008, when he was transferred from USP-Atwater to a state prison in North Carolina.  Plaintiff asserts that prison staff from USP-Atwater did not forward the Warden's response to him, against policy, even though they knew his next address.  (Complaint

at 2 ¶II.C; First Amended Complaint at 3 ¶II.C.)  Plaintiff asserts that he wrote to prison administration staff requesting his response and additional grievance forms in order to file on all facts [in the complaint], but the BOP declined to respond.  (Id.)  Thus, Plaintiff argues that the BOP's grievance process was unavailable to him.

### ***Plaintiff never received the Warden's response***

The Ninth Circuit has clarified that improper screening of an inmate's grievances renders administrative remedies "effectively unavailable" such that exhaustion is not required under the PLRA.  Sapp v. Kimbrell, 623 F.3d 813, 826-27 (9th Cir. 2010).  Delay in responding to a grievance may demonstrate that no administrative process is in fact available.  Brown v. Valoff, 422 F.3d 926 (9th Cir. 2005).  The PLRA does not require exhaustion when circumstances render administrative remedies effectively unavailable.  Albino, 697 F.3d 1023.

Plaintiff argues that the BOP's process was not available to him because he never received a response to his first level grievance from the Warden.  Plaintiff declares under penalty of perjury that he never received any response after he submitted his grievance at the first level of review, even though he wrote to prison administration staff, after he was transferred from USP-Atwater, requesting his response.  (Complaint at 2 ¶II.C; First Amended Complaint at 3 ¶II.C.)  Defendants have produced a copy of the Warden's response, dated April 7, 2008, and they argue that there is no evidence that the appeals process was not available to Plaintiff.  However, it is Defendants' burden to prove that the process was available, and Defendants have not provided any evidence that the Warden's response was sent to Plaintiff at the North Carolina state prison, or that Plaintiff otherwise received or was served the response.  Plaintiff could not appeal a response he never received.

Defendants have argued that the process was available but Plaintiff chose not to use it.  However, the evidence before the court shows that despite his efforts to obtain a response by writing to prison officials, Plaintiff was never mailed, or received a response to his first level appeal, causing the process to be unavailable to Plaintiff.

///

///

### *No BOP forms or federal process were available at state prison*

The PLRA does not expressly address an inmate's obligation to grieve violations of constitutional rights in one facility when incarcerated in another, or under what circumstances the grievance procedure in one facility should be considered "available" to an inmate who has been transferred to another.  The cases are not uniform on this topic, and the Ninth Circuit has yet to address the precise issue faced by this Court.  Many courts hold that the mere fact of a transfer does not affect a prisoner's obligation to exhaust his administrative remedies before filing suit.  See, e.g., Napier v. Laurel County, 636 F.3d 218, 223-24 (6th Cir. 2011); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 35 (1st Cir. 2002); see Rodriguez v. Senkowski, 103 F.Supp.2d 131, 134 (N.D.N.Y 2000) ("[T]he mere fact that Plaintiff has been transferred to another prison facility does not necessarily render the exhaustion requirement moot.").

Most courts agree that grievance procedures at a transferor facility remain available to prisoners transferred to a different prison if both prisons are administered by the same agency.  See, e.g., Flournoy v. Schomig, 152 Fed.Appx. 535, 537-38 (7th Cir. 2005) (unpublished order) (PLRA's exhaustion requirement not satisfied where administrative procedures provided for the pursuit of a grievance following prisoner's transfer to another state institution); Carini v. Austin, 2008 WL 151555, at *4 (S.D.N.Y. Jan 14, 2008); Finger v. Superintendent McFinnis, 2004 WL 1367506, at *1 (S.D.N.Y. June 16, 2004).

Other courts have concluded that a transfer, particularly in the case of a transfer from a county facility to a state facility, may render administrative remedies at the transferor facility unavailable.  See Rodriguez v. Westchester County Jail Correctional Dep't., 372 F.3d 485, 488 (2d Cir. 2004); Bradley v. Washington, 441 F.Supp.2d 97, 102-03 (D.D.C. 2006) (denying motion to dismiss for failure to exhaust administrative remedies where transfer to federal custody made administrative review of claims based on incidents in the District of Columbia jail "unavailable"); Johnson v. Maha, 460 Fed.Appx. 11 (2d Cir. 2012) (unpublished order) (county jail inmate was excused from exhaustion requirement as to his § 1983 claim against county jail employees for allegedly assaulting him, where the grievance process became

///

unavailable to him when he was moved into state custody and transferred to another facility in another jurisdiction less than two days after the alleged assault).

Plaintiff has declared, under penalty of perjury, that despite his efforts to obtain forms by writing to prison administration staff at USP-Atwater, he was unable to gain access to federal forms or federal process at the state facility where he was transferred.  (Complaint at 2 ¶II.C; First Amended Complaint at 3 ¶II.C.)  Defendants argue that there is no evidence the process was not available to Plaintiff.  However, it is Defendants' burden to prove that the process <u>was</u> available, and Defendants have not provided any evidence that Plaintiff had the means at the state prison to continue appealing his USP-Atwater federal grievance no. 486531-F1.

### F.   <u>Conclusion</u>

Based on the foregoing analysis, the court finds that Plaintiff exhausted the administrative remedies that were available to him with grievance no. 486531-F1.  This grievance concerns Plaintiff's claims in this action that his religious property "including items necessary for daily religious practice" were taken, and that his incoming mail, including correspondence from family and friends, was withheld from him.  (Doc. 30-3 at 13-14.)  Therefore, Defendants' motion to dismiss for failure to exhaust remedies should be denied as to Plaintiff's claims based on the taking of his religious property and interference with his incoming mail.

Plaintiff has not exhausted his available remedies for any of the other claims in this action.  Therefore, Defendants' motion to dismiss for failure to exhaust remedies should be granted as to Plaintiff's remaining claims, concerning denial of religious meals, denial of access to a rabbi, and lack of Jewish materials in the chapel.

## IV.   **MOTION TO DISMISS -- RULE 12(b)(6)**

### A.   <u>Legal Standards</u>

#### 1.   <u>Motion to Dismiss</u>

"The focus of any Rule 12(b)(6) dismissal . . . is the complaint," <u>Schneider v. California Dept. of Corr.</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), which must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief . . . ," Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Moss, 572 F.3d at 969. The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 679; Moss, 572 F.3d at 969. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Plaintiff must allege facts linking each named defendant to the violation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1937, 1949 (2009).

## 2.  Bivens Actions

A Bivens action is the federal analog to suits brought against state officials under 42 U.S.C. § 1983. Hartman v. Moore, 547 U.S. 250, 126 S.Ct. 1695 (2006). "Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Stum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991). The basis of a Bivens action is some illegal or inappropriate conduct on the part of a federal official or agent that violates a clearly established constitutional right. Baiser v. Department of Justice, Office of U.S. Trustee, 327 F.3d 903, (9th Cir. 2003). "To state a claim for relief under Bivens, a plaintiff must allege that a federal officer deprived him of his constitutional rights." Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010) (citing see Schearz v. United States, 234 F.3d 428, 432 (9th Cir. 2000). A Bivens claim is only available against officers in their individual capacities, Morgan v. U.S., 323 F.3d 776, 780 n.3 (9th Cir. 2003); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996), and Plaintiff must allege facts linking each named defendant to the violation of his rights, Iqbal, 556 U.S. at 676; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "A plaintiff must plead more than

a merely negligent act by a federal official in order to state a colorable claim under <u>Bivens</u>." <u>O'Neal v. Eu</u>, 866 F.2d 314, 314 (9th Cir.1988).   The factual allegations must be sufficient to state a plausible claim for relief, and the mere possibility of misconduct falls short of meeting this plausibility standard.   <u>Iqbal</u>, 556 U.S. at 678-78; <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009).

### 3.   First Amendment Claim for Violation of Free Exercise Clause

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend. I.   Prisoners "retain protections afforded by the First Amendment," including the free exercise of religion.  <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987). However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" <u>Id</u>. (quoting <u>Price v. Johnson</u>, 334 U.S. 266, 285 (1948)).

The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.  <u>Shakur v. Schriro</u>, 514 F.3d 878, 884-85 (9th Cir. 2008).

The Supreme Court has not recognized a claim sounding in the First Amendment under <u>Bivens</u>.   <u>Iqbal</u>, 556 U.S. at 675.   However, "the Court assum[ed] without deciding" in <u>Iqbal</u> "that Iqbal's First Amendment claim [was] actionable in a <u>Bivens</u> action."  <u>Id.</u> at 663.

### 4.   First Amendment Claim for Interference with Incoming Mail

Prisoners have "a First Amendment right to send and receive mail."  <u>Witherow v. Paff</u>, 52 F.3d 264, 265 (9th Cir. 1995).   The right to receive mail is subject to substantial limitation, however, and the regulation or policy infringing on the right will be upheld if it is reasonably related to legitimate penological interests.  <u>Prison Legal News v. Lehman</u>, 397 F.3d 692, 699 (9th Cir. 2005) (citations omitted).   Prison regulations relating to the regulation of incoming mail are analyzed under the <u>Turner</u> reasonableness standard set forth in <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987).  <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).   The regulation is

valid if it is reasonably related to legitimate penological interests.  Turner, 482 U.S. at 89.  In determining the reasonableness of the regulation, court must consider the following factors: (1) whether there is a "valid, rational connection between the regulation and the legitimate government interest put forward to justify it," (2) "whether there are alternative means of exercising the right," (3) the impact that the "accommodation of the asserted constitutional right will have on guards and other inmates," and (4) "the absence of ready alternatives."  Id. at 89-90.  To state a claim for violation of the Free Exercise Clause of the First Amendment, a prisoner-plaintiff must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, Shakur, 514 F.3d at 884-85, without any justification reasonably related to legitimate penological interests, O'Lone 482 U.S. at 348.

The Supreme Court has not recognized a claim sounding in the First Amendment under Bivens.  Iqbal, 556 U.S. at 675.  However, "the Court assum[ed] without deciding" in Iqbal "that Iqbal's First Amendment claim [was] actionable in a Bivens action."  Id. at 663.

**B.**   **Defendants' Motion**

Defendants argue that Plaintiff fails to state a claim as to his demand for a contract rabbi, the alleged denial of access to his religious materials, and the alleged interference with incoming mail from his friends and family.  Defendants argue that Plaintiff has no constitutional right to an institution-provided rabbi.  With regard to Plaintiff's claims concerning religious materials and incoming mail, Defendants argue that Plaintiff has made conclusory allegations which are insufficient to state plausible Bivens claims as to the Defendants, fails to demonstrate the personal involvement of defendants Smith or Gonzales in the alleged interference with his incoming mail, and fails to allege more than a possibility of a constitutional violation.

**1.**   **Demand for a Contract Rabbi**

Defendants argue that Plaintiff has no constitutional right to an institution-provided rabbi.  Defendants cite cases decided in the Ninth Circuit which held that the First Amendment

///

does not guarantee an inmate access to the spiritual advisor of his choice, and prison officials are under no obligation to provide each inmate with his chosen spiritual counselor.

### 2.   Denial of Access to Religious Materials

Defendants argue that Plaintiff's allegations that he was denied his religious materials are merely conclusory and lack any facts from which any intent to interfere with his religious beliefs, or with his exercise thereof, may be inferred.   Defendants argue that Plaintiff's allegations that Lt. Gonzales told him that "he and Warden Smith had made these decisions, that they were not going to change a thing, and if he didn't like it go get a lawyer" do not demonstrate intentional conduct by defendants Smith or Gonzales necessary to impose individual liability against these officers.

### 3.   Denial of Access to Incoming Mail

Defendants argue that Plaintiff has not pled sufficient facts to demonstrate the personal involvement of defendants Smith or Gonzales in the alleged interference with his incoming mail.  Defendants argue that Plaintiff's allegations -- that his Unit Team told him they only received two letters for him during a three-month period, but his friends and family told him they sent much more -- do not establish any connection between defendants Smith or Gonzales, who were not part of the Unit Team.

Defendants also argue that Plaintiff has not alleged facts demonstrating more than a possibility that a constitutional violation occurred, because the alleged discrepancy between the number of letters sent and received could just as likely be explained by a problem with the post office or a miscommunication between Plaintiff and his friends and family.

### C.   Plaintiff's Opposition

Plaintiff requests the court to take into consideration his status as a prisoner who is not knowledgeable of the law and does not have access to the law library or legal assistance.

### 1.   Denial of Access to a Rabbi

Plaintiff disagrees with Defendants' interpretation of the law.  Plaintiff argues that he has the constitutional right to a spiritual counselor of his faith, even if he does not have the right to a paid or full-time rabbi "of his choice."  (Opp'n, Doc. 34 at 7.)

### 2.      **Denial of Access to Religious Materials**

Plaintiff argues that his factual allegations for this claim are not conclusory, and that he has alleged more than the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  (Id. at 5 ¶7.)  Plaintiff asserts that he alleges in the First Amended Complaint that he was denied access to religious items, even after the Chaplain notified staff that he required them (Id.); that on August 14, 2007, he spoke to Lt. Gonzales and complained about being denied religious items (Id.); that he alleged that all of his personal property, including religious items, was taken on or about December 24, 2007 (Id. at 6 ¶8); and that Supervisor of Education M. Chavez told him that Warden Smith, Lt. Gonzales, and Lt. Miller were the ones who had decided Plaintiff would not be allowed to receive any of his property (including religious items) as long as he remained at USP-Atwater (Id. ¶9).  Plaintiff argues that Defendants' actions were not merely negligence, because they made a conscious determination not to allow Plaintiff to receive religious literature and intentionally took and refused to return Plaintiff's religious items, against their own policies.  (Id. at 8 ¶11.)  Plaintiff alleges that he specifically notified Defendants numerous times that the items they took from him, or denied him, were essential for his religious practice.  (Id.)

### 3.      **Denial of Access to Incoming Mail**

Plaintiff argues that he alleged facts showing that defendants Smith and Gonzales personally acted to deny him access to incoming mail.  Plaintiff alleges that these defendants set the policy whereby SHU inmates were not allowed to receive publications through the mail, and by order of defendants Smith and Gonzales, all publications were to be placed and stored with the inmate's personal property until the inmate left the SHU.  (Id. at 9 ¶12.)  Plaintiff alleges that after he left the SHU, defendants Smith, Gonzales, and Miller made a joint decision not to allow Plaintiff to receive any mail, not just publications, stating that all of Plaintiff's mail would be placed in property storage and not given to him.  (Id. at 9-10 ¶13.)  Plaintiff alleges that it was not his Unit Team that decided to withhold Plaintiff's mail; it was Defendants who made that call.  (Id. at 10 ¶13.)

///

Plaintiff also argues that he has demonstrated more than the mere possibility of a constitutional violation.  Plaintiff asserts that he was denied his publications while he was in the SHU and was told that his publications would be stored with his personal property until he left the SHU.  (Id. at 11 ¶14.)  Plaintiff alleges that when he left the SHU and his publications were returned to him, he was missing all of his publications, ten months' worth of magazines, newsletters, journals, and newspapers were gone, with no explanation of what happened to them.  (Id. at 9 ¶12.)  Plaintiff also alleges that when he began to receive his mail, only after making numerous complaints, it consisted of only a few pieces, and the two-and-a-half months of mail that was to have been placed in storage, was gone.  (Id. at 10 ¶13.)

Plaintiff asserts that Defendants' argument -- that the alleged discrepancy between the number of letters sent and received could just as likely be explained by a problem with the post office or a miscommunication between Plaintiff and his friends and family – is without merit, because a problem with the post office would not account for months of lost publications which Plaintiff has verified were being set to him at the correct address.  Plaintiff also argues that the sheer numbers of missing publications, letters, and cards demonstrate more than a mere possibility that a constitutional violation occurred.  Plaintiff asserts that he can obtain evidence showing that for nearly two decades, he has consistently received large amounts of correspondence from friends and family, especially during the holidays and for his birthday, whereas from December 2007 through April 2008, he received less than half a dozen cards and letters.  (Id. at 12 ¶17.)

Plaintiff alleges that between December 24, 2007, when he left the SHU, and March 31, 2008, when he left USP-Atwater, Defendants continued to deny him his publications and almost all of his mail, which cannot be attributed to the SHU policy.  (Id. at 9-10 ¶13.)

**D.    Defendants' Reply**

       **1.    Denial of Access to a Contract Rabbi**

Defendants argue that Plaintiff narrowly reads the law to allow him a spiritual counselor of his faith, but Plaintiff undermines this contention by acknowledging that the law does not "require prison officials to supply full-time clergy at state expense."  (Reply at 2 ¶I.A.)

### 2.        **Denial of Access to Religious Materials**

Defendants argue that Plaintiff has acknowledged that he cannot allege an intentional act by Warden Smith or Lt. Gonzales when he states they "knew or should have known that [he] had these rights."  Defendants reassert that Plaintiff allegations are not facts sufficient to state a <u>Bivens</u> individual liability claim.

### 3.        **Denial of Access to Incoming Mail**

Defendants argue that Plaintiff's claim that the mail from friends and family was withheld from December 24, 2007 to early March 2008 lacks sufficient facts to state a claim for a constitutional violation by Warden Smith or Lt. Gonzales.  Defendants argue that Plaintiff must provide evidence in support of his claims, not merely allegations and unsubstantiated claims.  Defendants argue that even if Plaintiff provides evidence of a difference in the number of family letters received during the time period at issue, this does not show that Warden Smith or Lt. Gonzales individually acted to violate his constitutional rights.

Defendants also argue that even if Plaintiff proved that his publications were sent to him from various publishers, this would not be evidence that either Warden Smith or Lt. Gonzales deliberately withheld his publications.

### E.    **Discussion**

### 1.        **Denial of Access to a Rabbi**

As discussed above in this order at ¶III.F., the court has found that Plaintiff failed to exhaust the available administrative remedies for his claims concerning denial of religious meals, denial of access to a rabbi, and lack of Jewish materials in the chapel, and that Defendants are entitled to dismissal of those claims for failure to exhaust.  Based on this finding, the court shall not consider Defendants' arguments that Plaintiff's claim for denial of access to a rabbi should be dismissed for failure to state a claim.  <u>See</u> <u>Perez v. Wisconsin Dep't of Corr.</u>, 182 F.3d 532, 534 (7th Cir. 1999) (vacating judgment and remanding with instructions to dismiss for failure to exhaust in case where district court granted summary judgment to defendants on the merits and did not rule on their pending motion for dismissal based on failure to exhaust).

### 2.      Denial of Access to Religious Materials

As discussed above, "[t]he focus of any Rule 12(b)(6) dismissal . . . is the complaint," Schneider, 151 F.3d at 1197 n.1.  To state a claim for violation of the Free Exercise Clause of the First Amendment, a prisoner-plaintiff must show the defendants burdened the practice of his religion, by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, Shakur, 514 F.3d at 884-85, without any justification reasonably related to legitimate penological interests, O'Lone 482 U.S. at 348.  When deciding a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations are accept as true, but legal conclusions are not.  Iqbal, 556 U.S. at 678.

After review of the First Amended Complaint, and assuming that Bivens liability extends to First Amendment claims, the court finds that Plaintiff's allegations against defendants Smith, Gonzales, and Miller, set forth above in this order at ¶II.A., are sufficient to state a claim against them for violation of the Free Exercise Clause of the First Amendment, for denial of his essential daily prayer items, such as his siddur/prayer book, tallit/prayer shawl, yarmulke/religious head covering, and religious literature including scripture .

Defendants' argument that Plaintiff's allegations are conclusory is without merit.  Under the Ninth Circuit's liberal pleading standards, Plaintiff's factual allegations, taken as true, state a claim that is plausible on its face, showing that defendants Smith, Gonzales, and Miller burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests.  Therefore, Defendants' motion to dismiss this claim under Rule 12(b)(6) shall be denied.

### 3.      Access to Incoming Mail

As discussed above, prisoners have "a First Amendment right to send and receive mail." Witherow, 52 F.3d at 265.  Prison regulations relating to the regulation of incoming mail are valid if reasonably related to legitimate penological interests.  Turner, 482 U.S. at 89.  Plaintiff must allege facts linking each named defendant to the violation of his rights, Iqbal, 556 U.S. at 676.

Assuming that <u>Bivens</u> liability extends to First Amendment claims, the court finds that Plaintiff's allegations in the First Amended Complaint, set forth above in this order at ¶II.C., state a cognizable claim for interference with his mail against defendants Smith and Gonzales. Under the Ninth Circuit's liberal pleading standards, the court finds Plaintiff's allegations that defendants Smith and Gonzales made rules and decisions not to allow Plaintiff to receive any publications while in administrative segregation, and not to receive any of his property while at USP-Atwater, with no apparent penological interests, to be sufficient to state a cognizable claim for interference with Plaintiff's mail, in violation of the First Amendment.  Defendants' argument that Plaintiff is required to provide evidence at this stage of the proceedings is unpersuasive, because to survive a motion to dismiss, a complaint must only contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  <u>Iqbal</u>, 556 U.S. at 678.

## V.    CONCLUSION AND RECOMMENDATIONS

### 1.    <u>Motion to Dismiss for Failure to Exhaust Administrative Remedies</u>

With respect to Plaintiff's claims for denial of religious meals, access to a contract rabbi, and the availability of Jewish materials in the prison chapel, the court finds that Defendants have met their burden of demonstrating that Plaintiff failed to exhaust his administrative remedies prior to filing suit, in compliance with § 1997e(a).  Defendants have shown evidence that Plaintiff failed to exhaust his remedies by an inmate appeal pursuant to the BOP's process at 28 C.F.R. §542.10, <u>et</u> <u>seq.</u>, concerning these claims, and Plaintiff has not shown that he exhausted all the remedies available to him.  Therefore, the court finds that Defendants are entitled to dismissal of Plaintiff's claims for denial of religious meals, access to a contract rabbi, and the availability of Jewish materials in the prison chapel, for failure to exhaust administrative remedies.

With respect to Plaintiff's claims for denial of access to his religious prayer items and interference with his mail, the court finds that Defendants failed to meet their burden of demonstrating that the BOP's administrative grievance process was available to Plaintiff after he was transferred from USP-Atwater to the state prison in North Carolina.  The court finds

that Plaintiff has sufficiently alleged that the process was unavailable to him after he was transferred.   Therefore, Defendants' motion to dismiss Plaintiff's claims for denial of his religious prayer items and interference with his mail, for failure to exhaust administrative remedies, should be denied.

**2.      Motion to Dismiss for Failure to State A Claim under Rule 12(b)(6)**

With respect to Plaintiff's claim for denial of access to his religious prayer items, the court finds that Plaintiff has stated cognizable claims in the First Amended Complaint against defendants Smith, Gonzales, and Miller for violation of the Free Exercise Clause of the First Amendment.

With respect to Plaintiff's claim for interference with his incoming mail, the court finds that Plaintiff has stated cognizable claims in the First Amended Complaint against defendants Smith and Gonzales for violation of his First Amendment right to incoming mail.

Therefore, Defendants' motion to dismiss Plaintiff's claims for denial of access to religious items and interference with his incoming mail should be denied.

**3.      Recommendations**

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      Defendants' motion to dismiss, filed on December 11, 2012, be GRANTED IN PART AND DENIED IN PART;

2.      Defendants' motion to dismiss for failure to exhaust remedies be GRANTED as to Plaintiff's claims for denial of religious meals, denial of access to a rabbi, and lack of Jewish materials in the chapel, and DENIED as to Plaintiff's claims for denial of access to religious prayer items and interference with incoming mail;

3.      Plaintiff's claims for denial of religious meals, denial of access to a rabbi, and lack of Jewish materials in the chapel be DISMISSED from this action based on Plaintiff's failure to exhaust administrative remedies;

4.      Defendants' motion to dismiss for failure to state a claim be DENIED as to Plaintiff's claims for denial of access to religious items and interference with incoming mail; and

22

5.      This action proceed on the First Amended Complaint with Plaintiff's claim for denial of access to religious prayer items in violation of the Free Exercise Clause against defendants Smith, Gonzales, and Miller; and Plaintiff's claim for interference with incoming mail in violation of the First Amendment against defendants Smith and Gonzales.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **thirty (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 18, 2013**                              **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE

23